The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT BROTHERSON, PATRICK ) 
SHEEHY, and CAROLYN BECHTEL, )    No. C07-1787 (RAJ)
individually and on behalf of all others similarly )
situated, )    PLAINTIFFS' OPPOSITION
                        Plaintiffs, )    TO DEFENDANT'S MOTION
        v. )    FOR SUMMARY JUDGMENT
 )    ON CONTRACT DAMAGES
THE PROFESSIONAL BASKETBALL CLUB,)
L.L.C., an Oklahoma limited liability company )    **Noted On Motion Calendar**
registered to do business in the State of )    **October 10, 2008**
Washington, )
                        Defendant. )
 )

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
(07-1787RAJ)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Table of Contents**

I. INTRODUCTION ....................................................................................................................2

II. FACTS ...................................................................................................................................4

III. ARGUMENT .........................................................................................................................8

    A.  Plaintiffs And Members Of The Proposed Contract Class Have An Unambiguous Contract With The PBC To Purchase Today's Tickets At Yesterday's Prices. ...............................................................................................8

        1.  The PBC Made A Firm Offer To All Persons Who Were Season Ticket Holders For The 2006-2007 Sonics Season. ..............................................8

        2.  In Making Their Contract Offer, The PBC Impliedly Promised That The Sonics Would Play Their Home Games In Seattle Through The Term Of The Contract. ................................................................................10

        3.  Plaintiffs And All Members Of The Proposed Contract Class Accepted The PBC's Firm Offer When They Renewed Their Season Tickets For The 2007-2008 Sonics Season. ................................................................11

        4.  Both The Plaintiffs And All Members Of The Proposed Contract Class Gave Consideration For The Contract That Was Formed When Plaintiffs And The Members Of The Proposed Contract Class Accepted The PBC's Firm Offer Of A Contract. ..........................................................12

    B.  Contrary To The PBC's Mischaracterization Of Its Contract With Emerald Club Members, Plaintiffs Do Not Allege A Breach Of License. .................................12

    C.  Plaintiffs Are Entitled To Damages For The PBC's Breach Of The Emerald Club Contract's Ticket Purchase And Price Guarantee Option. ..............................15

    D.  The Damages Incurred By Plaintiffs Are Reasonably Foreseeable From The PBC's Breach. ..........................................................................................................18

    E.  The Absence Of Out-Of-Pocket Losses Does Not Bar Plaintiffs' Claim For Damages. ................................................................................................................20

    F.  Refunding The Bare Ticket Price Is Insufficient To Give Plaintiffs The Benefit Of The Bargain. ..........................................................................................22

    G.  The Tickets Do Not Limit The Recovery For Plaintiffs' Breach Of Contract Claim. .....................................................................................................................23

IV. CONCLUSION .....................................................................................................................24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
(07-1787RAJ) Page - i

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

"FOR ALL REGULAR [SEASON TICKET HOLDERS]:  (In appreciation of what you mean to this franchise, ownership wants to offer you an unprecedented commitment – cost certainty for the next three seasons.  Details will be included in the renewal package that you will receive shortly.)"[1][2]

"Renewing [season ticket holders] will become part of an exclusive club called the Emerald Club. . . . Emerald Club members receive 3-year cost certainty through the 2009-10 Season."[3]

"Renew now, and we'll reward you with an unprecedented commitment
**THREE-YEAR COST CERTAINTY THROUGH THE 2009-10 SEASONS**
Renew your season tickets and earn guaranteed cost certainty through 2009-10."[4]

"Enjoy cost certainty through the 2009-10 season.  While prices may rise for new season Ticket Holders, you will pay 2006-07 prices."[5]

"With your commitment to Sonics Basketball for the 2007-08 season and to celebrate your membership in the Emerald Club, ownership is proud to offer you a three-year guaranteed cost certainty that extends through the 2009--10 season."[6]

"Season Ticket Holders, you should have received your 2007-08 Renewal in the mail. Renewing non-Courtside Season Ticket Holders will enjoy membership in the Emerald Club which guarantees a 3-Year Cost Certainty!"[7]

"Membership in the exclusive Emerald Club will always differentiate these accounts and comes with a three-year cost certainty through the 2009-10 Season."[8]

"**By renewing this season, you will be part of the Emerald Club.  Your prices will be locked in for the next three years!!!!**"[9]

"Our current season ticket holders are getting a way better deal by being in the

---

[1] The transcript of the deposition of Brian Byrnes, taken October 1, 2008, along with selected exhibits, ("*Byrnes Deposition*") is attached as Exhibit B to the Declaration of Frederick W. Schoepflin ("*Schoepflin Declaration*"). Plaintiffs refer to this Exhibit, including the transcript and exhibits as the *Byrnes Deposition* throughout this brief.

[2] *Byrnes Dep.* Ex. 3 at PBC_CA_100167 (March 5, 2007 email regarding draft language to be included in message from Clay Bennet to season ticket hodlers).  Brian Byrnes is the Senior Vice President Of Sales And Marketing for the Professional Basketball Club ("PBC") in charge of ticket sales, suite sales, game presentation, marketing, advertising promotions, and client retention.  *Byrnes Dep.* at p.8, lines 18-19 and p. 9, lines 14-16.

[3] *Byrnes Dep.* Ex. 4 at PBC_CA_100337 (March 26, 2007 email to the NBA informing them about the creation of the Emerald Club).

[4] *Byrnes Dep.* Ex. 6 at PBC_CA_100077 ( March/April, 2007 brochure sent to all season ticket holders).

[5] *Id.* at PBC_CA_100081.

[6] *Id.* at PBC_CA_100095.

[7] *Byrnes Dep.* Ex. 9 at PBC_CA_100321.  This email dated April 4, 2004, set out a public address announcement to be used at a Sonics game.  *See Byrnes Dep.* at p. 63, lines 6-10.

[8] *Byrnes Dep.* Ex. 16 at  PBC_CA_100149.  Exhibit 16 is a guidebook that was sent to season ticket holders in September/October, 2007, along with their season ticket books.  *Byrnes Dep.* at  p. 89.

[9] *Byrnes Dep.* Ex. 18 at PBC_CA_100301 (filed dounder seal).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 1

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Emerald Club and having their season ticket prices stay the same for the next three years.  Just this upcoming season by itself, you will be paying about $90 dollars less than new season ticket holders, and you could expect that savings to be even greater in the following two seasons, since ticket prices only seem to go up!"[10]

## I. <u>INTRODUCTION</u>

In Washington, the law recognizes both bilateral and unilateral contracts.  *Multicare Med. Ctr. v. Dep't of Soc. and Health Servs.,* 790 P.2d 124, 131 (Wash. 1990).  This case involves a unilateral contract.  The elements of a unilateral contract are (1) "a promise on the part of the offeror" and (2) "performance of the requisite terms by the offeree."  *Id.*; *see also Vizcaino v. Microsoft Corp.*, No. 93-178, 1994 U.S. Dist. LEXIS 21039, at *29 (W.D. Wash. Apr. 15, 1994) (citing *Multicare* for definition of unilateral contract).  The essential difference between a unilateral contract and a bilateral contract is in the method of acceptance.  *Multicare*, 790 P.2d at 131.  "[U]nder a unilateral contract, an offer cannot be accepted by promising to perform; rather, the offeree must accept, if at all, by performance, ***and the contract then becomes executed***."  *Id.* (citation omitted) (emphasis added).  As illustrated above, the PBC made a unilateral offer to all the holders of season tickets to the Sonics during the 2006-2007 season.  The offer was made many times, but the offer was always the same.  The PBC promised that if these then-current season ticket holders would renew their season tickets for the 2007-2008 seasons, the PBC would make these renewing season ticket holders members of an exclusive club called the Emerald Club, and that membership in this club would include a price guarantee for all Emerald Club members through the 2009-2010 basketball season.  The contract became final when the 2006-2007 season ticket holders renewed their tickets for the 2007-2008 season.[11]

---

[10] *Byrnes Dep*. Ex. 19 at PBC_CA_100487 (filed under seal).

[11] The PBC admits that there is a contract and that the terms of the contract are to be determined by this Court.  *See Schoepflin Decl*. Ex. A at p. 5, lines 17-24 (the PBC's Answers to Plaintiffs First Requests For Admissions).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 2

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Contrary to the PBC's whimsical characterization of the Emerald Club Contract[12] as a "pastiche" of portions of various documents, the Contract is unambiguously and completely set forth in many different documents.  The only part of the Contract that is not expressly set forth in the many statements of the unilateral contract offer by PBC to season ticket holders is that the games will be played in the Seattle area.  However, Brian Byrnes has confirmed that as part of the Contract, the PBC promised to play the games in the Seattle area.  With respect to the promise that games would be played in Seattle, Byrnes testified as follows:

Q.    Wherever the team was playing, [renewing season ticket holders] were going to be Emerald Club members?

A.    That's right.  In Seattle.[13]

Q.    Did you tell any…Emerald Club members that you were contemplating, in a serious way, leaving Seattle?

A.    No.

Q.    Did you assure them that you planned to stay in Seattle?

A.    Absolutely.[14]

Q.    So it would have, then, made sense, then, for anybody who renewed their tickets at any time, their season tickets, to rely . . . on the belief that the team was going to be in Seattle for the three years?

A.    Until otherwise noted, we were always performing to be in Seattle.

Q.    Until June of 2008.

A.    Until July 2nd of 2008.[15]

The PBC's Motion For Summary Judgment On Contract Damages ("PBC Motion") is fundamentally flawed because it primarily ignores the Emerald Club Contract at issue in this

---

[12] The PBC admits that there is a contract with the terms to be determined by this Court.  *See supra* footnote 11.
[13] *Byrnes Dep.* at p. 49, lines 1-3.
[14] *Id.* at p. 83, lines 19-25.
[15] *Id.* at p. 104, line 25 to p. 105, line 7.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 3

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

case and, instead, focuses on the sale of season tickets as a contract.  The PBC states:

> Defendant's contention is that the "contract" was a simple sale of a revocable license for a single season's worth of tickets for 2007-2008. Equally important, defendant contends that the essential terms of that contract are on the front and back of the tickets delivered to plaintiffs.[16]

Having created this "straw man," PBC focuses its motion on vigorously attacking its irrelevant creation, which has little to do with this case, other than that the renewal of their season tickets for the 2007-2008 season was the consideration requested of season ticket holders by the PBC and the consideration that, when given by season ticket holders, made binding the PBC's guarantee that all renewing season ticket holders would be given the opportunity to renew their season tickets at 2006-2007 prices through the 2009-2010 basketball season.

## II.  FACTS

In February, 2007, the PBC was concerned about attrition of its season ticket holders and was "trying to find ways to provide more and more emotional value to being a season ticket holder."[17]  The Emerald Club, a promotional idea originated by Brian Byrnes, was a designation applied to Sonics season ticket holders during the 2006-2007 who renewed for the 2007-2008 season.[18]  The objective of the Emerald Club "was to stimulate renewal.  It was to engender a greater renewal rate than [the PBC] had previously forecasted."[19]  The PBC was "promoting a notion that season ticket process would remain static to this particular audience group [renewing season ticket holders] over the next 3 years."[20]  Such an idea of guaranteeing future season ticket subscriptions at fixed prices was unprecedented.  As stated by Mr. Byrnes:

> Unprecedented commitment is relative to cost certainty, and I don't believe our organization in its history had ever offered price certainty like

---

[16] Dkt. No. 80 at p. 4, lines 2-26 (the PBC Motion for Summary Judgment on Damages).
[17] *Byrnes Dep.* at p. 19, lines 11-18; *Byrnes Dep.* at Ex. 1 (filed under seal).
[18] *Byrnes Dep.* at p. 12, lines 11-20.
[19] *Id.*
[20] *Id.* at p. 16, lines 19-21.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 4

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

> that for a multiyear term. . . . When I had vetted a concept like this . . . it was generally believed that it was fairly unprecedented for a team to fix pricing in a format like this.[21]

This idea of offering a guarantee of future season ticket subscriptions at fixed prices was not just unprecedented for the Sonics, but it was also unprecedented for any National Basketball Team.[22]

The PBC presented its offer to 2006-2007 season ticket holders in a variety of ways.[23] However, the substance of the offer remained constant, namely that if 2006-2007 season ticket holders would renew their season tickets for the 2007-2008 season, they would be guaranteed season ticket renewals to 2006-2007 prices through the 2009-2010 season.[24] The offer was first made in a brochure sent to all ticket holders in March/April, 2007.[25] The offer continued to be made throughout the summer of 2007 and into the Fall of 2007.[26]

The only consideration required of 2006-2007 season ticket holders to be made members of the Emerald Club, and thus be entitled to benefit from the PBC's guarantee of an opportunity to purchase season ticket renewals through the 2009-2010 season at 2006-2007 prices, was for the season ticket holders to renew their season tickets for the 2007-2008 season.[27] It did not matter why they renewed their season tickets; if they renewed, they earned Emerald Club designation, along with the benefits of Emerald Club membership.[28]

Although there was originally a deadline by which season ticket holders were required to renew their season tickets in order to become members of the Emerald Club, that deadline was not observed, and 2006-2007 season ticket holders who renewed after the deadline were still

---

[21] *Id.* at p. 30, lines 6-18.
[22] *Id.* at lines 15-18.
[23] *Id.* at p. 38, lines 6-23.
[24] *See* Page 1, *supra*.
[25] *Byrnes Dep.* Ex. 6.
[26] *See* Page 1, *supra*.
[27] *Byrnes Dep.* at p. 49, line19 to p. 50, line 1.
[28] *Id.* at p. 50, lines 2-18.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 5

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

given membership in the Emerald Club.[29]  This extension of the deadline extended at least through the beginning of the 2007-2008 season.[30]  The mantra for those selling season tickets was "keep selling, keep selling, keep selling."[31]  This mantra was followed even after Clay Bennett's famous email, "I am a man possessed!  Will do everything we can.  Thanks for hanging with me boys, the game is getting started!"[32]  This email was in response to an email from Mr. Bennett's associate asking, "Is there any way to move here for next season or are we doomed to have another lame duck season in Seattle?"[33]

On April 16, 2007, Mr. Bennett informed another of his associates, Jim Kneeland, that he had spoken at length with the National Basketball Association and that "[t]hey are very concerned that we be careful in our messaging relative to renewals . . . could be devastating."[34]  When asked whether he had been warned that he needed to be careful about his messaging relative to renewals, Mr. Byrnes testified that he had never been told to be careful about messaging and that, on the contrary, he had been told to "stay the course" and continue vigorous marketing of season ticket renewals.[35]

The PBC never informed any Emerald Club members that there was any likelihood that the team would leave Seattle prior to the end of the 2009-2010 season.  In fact, Mr. Byrnes testified that up until the end of June, 2008, he was promoting and marketing the Sonics as if the team would remain in Seattle.[36]  Mr. Byrnes further testified that he held his belief that it was just as likely that the team would stay in Seattle as go somewhere else, all the way up to July 2,

---

[29] *Id.* at p. 74, lines 4-7.
[30] *Id.* at p. 96, lines 10-17.
[31] *Id.* at p. 74, lines 23-25.
[32] *See Byrnes Dep*. Ex. 12.
[33] *Id.*
[34] *See Byrnes Dep*. Ex. 13.
[35] *Byrnes Dep.* at p. 85, lines 4-9.
[36] *Id.* at p. 101, line 19 to p. 103, line 20.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 6

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2008, and that his belief was reasonable.[37]  In accordance with his testimony about his own reasonable belief, Mr. Byrnes testified that he believed that it would have been reasonable for every Emerald Club member to share his belief that the team would remain in Seattle.[38]

Following the direct examination of Mr. Byrnes, PBC's counsel, Brad Keller, questioned Mr. Byrnes about his reasonable belief, held until July 2, 2008, that the team would remain in Seattle through the 2009-2010 season.  During that examination, Mr. Keller got Mr. Byrnes to testify that there was some uncertainty about the future of the team during the time in question.[39]  However, on redirect examination, Mr. Byrnes testified that, to the extent he had any uncertainty, he did not share it with any Emerald Club members.[40]  Mr. Byrnes testified:

> Q.    Okay.  But . . . you did share with Emerald Club members time and
>        time again the assurance that you thought the team would be in
>        Seattle and that they had a three-year price guarantee there?
>
> A.    It was our business model to continue to convey a sense of
>        expectation that we would make it work in Seattle.[41]

As of at least December 12, 2007, well after the 2007-2008 season had begun and after season ticket renewals for that season were complete, the PBC had never withdrawn a single Emerald Club benefit, including the guarantee of the right to purchase season tickets through the 2009-2010 season at 2006-2007 prices.[42]

With respect to season tickets being revocable licenses, Mr. Byrnes testified that the only circumstances under which the PBC would revoke a ticket would be if there was some building reconfiguration that would eliminate a season ticket holder's seat.[43]  On the issue of revocability

---

[37] *Id.* at p. 105, lines 9-17 and p. 108, lines 8-9.
[38] *Id.* at p. 108, lines 8-18.
[39] *Id.* at p. 125, line 25 to p. 128, line 17.
[40] *Id.* at p. 129, lines 2-12.
[41] *Id.*
[42] *Id.* at p. 99, line 23 to p. 100, line 4.
[43] *Id.* at p. 54, line 16 to p. 55, line 2.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 7

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of season tickets, Mr. Byrnes further testified:

> A. If I understand the question, what you're asking is, would we exercise our revocable license to take those [Emerald Club members] seats away and remarket them at a – at a higher rate.
>
> Q. That's exactly my question.
>
> A. And that is what we would not do.  That is – that would be an irresponsible business practice.[44]

Mr. Byrnes further testified that, other than when a seat was eliminated due to building configuration, he knew of no instance when a season ticket had ever been revoked.[45]  Mr. Byrnes testified that no season ticket holder's ticket had even ever been revoked for bad behavior, one of the conditions for ticket revocation stated on the back of tickets.[46]

## III.  ARGUMENT

**A.    Plaintiffs And Members Of The Proposed Contract Class Have An Unambiguous Contract With The PBC To Purchase Today's Tickets At Yesterday's Prices.**

**1.    The PBC Made A Firm Offer To All Persons Who Were Season Ticket Holders For The 2006-2007 Sonics Season.**

The PBC made a unilateral contract offer to all persons who were Sonics season ticket holders.  The contract offer was made on multiple occasions,[47] but each time the offer was made, the key provisions were repeated.  The offer was simple—if season ticket holders would renew their season tickets for the 2007-2008 season, they would be guaranteed the right to renew their season tickets through the 2009-2010 season at a fixed price in the amount of the prices charged for 2006-2007 season tickets.  The only condition to season ticket holders being entitled to the guarantee promised by the PBC was that they renew their season tickets for the 2007-2008 season.  There were no other conditions or requirements.

---

[44] *Id.* at p. 57, lines 13-19.
[45] *Id.* at p. 58, lines 12-21.
[46] *Id.*
[47] *See* Page 1, *supra*.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 8

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The PBC argues that because their offer was made in a brochure and other promotional material, the offer could not become part of the contract between the PBC and season ticket holders.[48]  The PBC is wrong.  In *Dunkelman v. Cincinnati Bengals, Inc.*, 866 N.E. 2d 576 (Ohio Ct. App. 2006), the court held that an offer in a brochure to renew season tickets became a binding contract when the season ticket holders purchased their tickets.  The court stated:

> The express written language of Rule 12 in the Club Seat Brochure states, "Once you have purchased your COAs and the new stadium opens, you must continue to purchase season tickets for your assigned seats on an annual basis to maintain your rights.  Failure to purchase season tickets will forfeit your right to the COA." …
>
> ***When the plaintiffs purchased their seat licenses, they purchased the right to purchase season tickets at a discounted rate for a specified number of years***.  Under the unambiguous terms of the contract, they obligated themselves to make annual payments for club-seat tickets only if they wanted to maintain ownership of their club-seat licenses.  Otherwise, they would forfeit their club-seat licenses to the Bengals, who would then resell them to others.
>
> Because the contract contained clear and unambiguous language that the plaintiffs had the unilateral right to cancel their club-seat licenses by not purchasing club-seat tickets, the Bengals' argument that the "Lease Term" section obligated the plaintiffs to pay for six to ten years of club-seat tickets is without merit.

*Id.* at 581 (emphasis added).  In *Dunkelman v. Cincinnati Bengals, Inc.*, 821 N.E.2d 198 (Ohio Ct. App. 2004), the court similarly stated:

> The brochure stated that the right to purchase tickets would be forfeited if the purchaser chose not to purchase season tickets.  All that was left was to determine the seat zone of the tickets.  But the Bengals tried to slip additional terms into the contract after the fans had already agreed to it.  The fans acted reasonably in believing that the only material information that would be forthcoming was the specific seat zone.
>
> Therefore, ***as a matter of law, the contract was formed when the fans signed the application for a COA and submitted their initial payments.***

*Id.* at 204 (emphasis added).

---

[48] Dkt. No. 80 at p. 5, line 21 to p. 6, line 5.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 9

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The cases cited by the PBC are inapposite.  Those cases involved advertisements sent to general audiences, not to specific customers of the offeror.  *Wilkerson v. Wegner*, 793 P.2d 983, 984 (Wash. Ct. App. 1990) involved an advertisement to the general public for a contest that in fact never took place.  *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 539 (9th Cir. 1983) involved an information circular distributed to the general photofinishing trade.  *Mesaros v. United States*, 845 F.2d 1576, 1578 (Fed. Cir. 1988) involved an advertisement sent to coin collectors with an offer to sell them commemorative coins.  The circular included a reservation of right to limit quantities shipped, subject to availability and to discontinue accepting any orders if the price of bullion increased.  *Id.*  The *Mesaros* court stated:

> A basic rule of contracts holds that whether an offer has been made depends on the objective reasonableness of the alleged offeree's belief that the advertisement or solicitation was intended as an offer.  Generally, it is considered unreasonable for a person to believe that advertisements and solicitations are offers that bind the advertiser.  Otherwise, the advertiser could be bound by an excessive number of contracts requiring delivery of goods far in excess of amounts available.

*Id.* at 1581.  Unlike the cases cited by the PBC, the PBC's offer was made only to holders of season tickets for the 2006-2007 Sonics season.  No member of the general public, or even the general audience for Sonics games, was eligible to respond to the offer.  Unlike the situation discussed in *Mesaros,* there was no danger that acceptances of the offer would exceed the number of seats available.  The PBC's offer to its season ticket holders was a direct offer made on multiple occasions, in multiple ways, to existing customers of the PBC.  There can be no question that the PBC intended the offer to be a firm offer or that the season ticket holders who accepted the offer viewed it as such.

**2.      In Making Their Contract Offer, The PBC Impliedly Promised That The Sonics Would Play Their Home Games In Seattle Through The Term Of The Contract.**

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 10

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The only unwritten part of the Emerald Club Contract between the PBC and Emerald Club members was the implied promise that the Sonics would remain in the Seattle area through the 2009-2010 season.  Throughout his deposition testimony, Mr. Byrnes confirmed that the Emerald Club Contract was always marketed to season ticket holders with the representation and understanding that the Sonics would be in the Seattle area through the 2009-2010 season.  Based upon Mr. Byrnes confirmation of the implied term of the contract, that games would be played in Seattle, the Court should interpret the Emerald Club Contract to include that term.

If there is any ambiguity regarding whether that term is a part of the Contract, that ambiguity should be construed against the PBC, the drafter of the Emerald Club Contract, as it was offered to season ticket holders.[49]  Even if the Court determines that the promise to play games in Seattle was not a part of the Contract, the guarantee of the right to purchase tickets through the 2009-2010 season at 2006-2007 prices, if accepted by season ticket holders by providing the consideration requested by the PBC, is an enforceable contract.  As discussed below, the PBC's breach of that Emerald Club Contract results in specific and substantial damages.

> **3.      Plaintiffs And All Members Of The Proposed Contract Class Accepted The PBC's Firm Offer When They Renewed Their Season Tickets For The 2007-2008 Sonics Season.**

Both the proposed Contract Class and the more limited subclass proposed for certification in this case include only persons who were season ticket holders to the Sonics during the 2006-2007 season and who renewed their season tickets for the 2007-2008 season.  Thus, by definition, every member of the proposed classes accepted the PBC's offer to become members

---

[49] *See, e.g., Wilson Court Ltd. P'ship v. Tony Maroni's,* 134 Wn.2d 692, 705, 952 P.2d 590 (1998) (ambiguity will be construed against party that drafted language); *Rouse v. Glascam Builders, Inc.,* 101 Wn.2d 127, 130, 677 P.2d 125 (1984) (ambiguity in contract must be construed against the drafter).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 11

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of the Emerald Club, with its guarantee of the right to purchase season tickets through the 2009-2010 season at 2006-2007 prices, and thus became beneficiaries of the Emerald Club Contract.

4.    **Both The Plaintiffs And All Members Of The Proposed Contract Class Gave Consideration For The Contract That Was Formed When Plaintiffs And The Members Of The Proposed Contract Class Accepted The PBC's Firm Offer Of A Contract.**

The PBC offered membership to 2006-2007 season ticket holders because the PBC was fearful that renewals would otherwise be down for the 2007-2008 Sonics season.  The PBC recognized that guaranteeing fixed prices to season ticket holders for future years might decrease the revenue of the PBC, but the PBC determined that the benefits of increased season ticket sales would outweigh that potential decrease in revenue.  By making the Emerald Club Contract offer, the PBC evidenced that the renewal of season tickets by 2006-2007 ticket holders would be sufficient consideration for the PBC's guarantee that season ticket holders would be given the right to renew their season tickets through the 2009-2010 season at 2006-2007 prices.

The adequacy of the consideration given by Emerald Club members cannot be questioned because it was exactly the consideration requested by the PBC.  The PBC unambiguously stated that if season ticket holders renewed their tickets for the 2007-2008 season, they would automatically become members of the Emerald Club, and that membership in that club would include a guaranteed right to purchase season tickets through the 2009-2010 season at 2006-2007 prices.  When the 2006-2007 season ticket holders provided the consideration requested by the PBC, the Emerald Club Contract was fully formed, and the PBC became bound to satisfy all of its obligations to Emerald Club members, including its guarantee of the right to buy season tickets through the 2009-2010 season at 2006-2007 prices.

B.    **Contrary To The PBC's Mischaracterization Of Its Contract With Emerald Club Members, Plaintiffs Do Not Allege A Breach Of License.**

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 12

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The PBC attempts mightily to distract the Court from the issue presented: whether the PBC breached the Emerald Club Contract, which secured to Plaintiffs the option to purchase season tickets for the 2008-2009 and 2009-2010 seasons for a specific, guaranteed ticket price. Instead of addressing this issue, the PBC repeatedly discusses the fact that the yet-to-be-produced tickets are licenses and that the law generally precludes recovery for breaches of licenses. This discussion is entirely irrelevant. Plaintiffs are not suing for the revocation of a license as the PBC misleadingly asserts.[50] Rather, Plaintiffs seek damages for breach of a contract that guaranteed them the option to purchase tickets for two years at guaranteed prices. As this section details, the cases cited by the PBC to support its contention that the Emerald Club contract is merely a revocable license are inapposite and a total distraction. None address the legal bounds of Plaintiffs' breach of *contract* claim, which the PBC has admitted for purposes of its summary judgment motion has been breached.

The PBC cites *Charpentier v. Los Angeles Rams Football Co.*, 89 Cal. Rptr. 2d 115, 120-22 (Cal. Ct. App. 1999), to support its position that Plaintiffs cannot claim damages merely because the contract secured an option to purchase revocable licenses. In contrast to Plaintiffs' claim, there was no contract at all in *Charpentier*–merely a first right of refusal to renew season tickets. *Id.* The court rightly concluded that "the Rams' failure to offer renewal in St. Louis to season ticket holders [did not] breach[] any actionable promise, express or implied." *Id.* at 120. Here, to the absolute contrary, there is a contract expressly granting all Emerald Club members an option to purchase 2008-2009 and 2009-2010 season tickets at a guaranteed price. The contract repeatedly states that Emerald Club members enjoy a "THREE-YEAR COST

---

[50] As testified by Brian Byrnes, the Emerald Club Contract offer was an unprecedented offer never before made by any NBA team. *See Byrnes Dep.* at p. 30, lines 6-18. This testimony further illustrates the ridiculousness of characterizing the Emerald Club Contract as nothing more than a sale of revocable vanilla tickets to games.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 13

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

CERTAINTY" and a "price assurance" where all other season ticket holders would be subject to "a price increase for new season ticket accounts."[51]  Members' "privileges" expressly include "own[ing] the same great seat for all home games."[52]  These express terms guaranteed the Emerald Club members an option to purchase tickets at a set price.  No such option guarantee existed in *Charpentier*, where there was, in fact, no contract at all.  89 Cal. Rptr. 2d at 120-22.  It is thus irrelevant to the PBC's attempt to limit damages in this case.[53]

The PBC's reliance on *In re Harrell*, 73 F.3d 218 (9th Cir. 1996) is equally misplaced.  As in *Charpentier*, the court in *Harrell* denied recovery to a party claiming a right to purchase future season tickets where there was no express agreement or contract guaranteeing that right.  The court explained that "[a]lthough season ticket holders are generally awarded the opportunity to renew, there is no guarantee that the Suns will extend the offer."  *Id.* at 220.  The court concluded: "a season ticket holder's expectation of renewal of season tickets is not a property right."  *Id.*  This holding does not bear upon the case at bar, as the PBC ***guaranteed*** Plaintiffs the right to purchase tickets for future seasons at ***guaranteed*** prices.[54]

Similarly, *Bowers v. Fédération Internationale de L'Automobile*, 489 F.3d 316 (7th Cir. 2007) offers no support for the position that the PBC takes in its motion.  Again, this case involves no contract, but a mere license that permitted car race fans entry, but did not guarantee any particular type of spectacle.  *Id.* at 321-23.  The *Bowers* case does not bear on Plaintiffs'

---

[51] *Byrnes Dep*. Ex. 6 at PBC_CA_100077.

[52] *Id.* at PBC_CA_100080.

[53] *Stern v. Cleveland Browns Football Club, Inc.*, No. 95-L-196, 1996 WL 761163 (Ohio App. Dec. 20, 1996) is equally inapposite.  As in *Charpentier*, there was no contract that the plaintiff could point to that guaranteed him a right to purchase tickets for subsequent seasons.  Rather, there was merely a course of conduct where season tickets were generally allowed a first right of refusal to purchase season tickets.  The PBC, however, offered an express guarantee to Emerald Club members to "own" their seats for two more years at guaranteed ticket prices.

[54] The PBC's citation to *Clear Channel Outdoor v. Seattle Popular Monorail Auth.*, 136 Wn. App. 781, 784 (2007) is equally misplaced.  There, the court held that "[i]n order to be a protected property interest, the interest must be something more than a mere unilateral expectation of continued rights or benefits."  *Id.*  This only supports Plaintiffs' position, in that they have much more than a unilateral expectation of a continued right.  They have a contract ***guaranteeing*** them the right to purchase tickets at a specific price.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 14

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

breach of contract claim in any way.  Plaintiffs do not claim to have obtained a mere license which the PBC has taken away.  Rather, Plaintiffs claim that they entered into a contract that expressly secured them an option to purchase tickets that has now been breached by the PBC's refusal to comply with the terms of the Emerald Club Contract.

Although the PBC frequently cites to *Ford v. Trendwest Resorts, Inc.*, 43 P.3d 1223 (Wash. 2002), this case does not support its position that Plaintiffs are not owed damages.  The Court in *Ford* merely determined that the plaintiff could not recover damages for lost future income where the contract that was breached only guaranteed him at-will employment.  Recovery based on future at-will income was too speculative to permit damage recovery, as at-will employment can be terminated by the employer at any time without cause.  *See id.* at 1228.  Here, however, the Contract guaranteed Plaintiffs the right to purchase two years of season tickets at a guaranteed price—a promise that the PBC could not cancel without breaching the Contract.  There is no uncertainty as to what Plaintiffs were offered through the terms of the contract or the pecuniary position it placed them in.  Even if the tickets themselves could be later revoked and refunded, this does not undermine the contractual option guaranteeing the purchase price.[55]  Plaintiffs will gain nothing more than what the contract guaranteed them by obtaining damages from the PBC.  *Cf. Id.* at 1228.

As these cases make clear, the PBC does little to advance a legitimate legal theory that would demonstrate that Plaintiffs are not entitled to damages.  To the contrary, under Washington law, Plaintiffs are entitled to benefit-of-the-bargain damages, as detailed below.

**C.    Plaintiffs Are Entitled To Damages For The PBC's Breach Of The Emerald Club Contract's Ticket Purchase And Price Guarantee Option.**

---

[55] The revocability of tickets is not relevant to the issues before this Court.  As Brian Byrnes testified, it "would be an irresponsible business practice" for the PBC to revoke tickets, only to resell them at higher prices.  *See Byrnes Dep.* at p. 57, lines 13-19.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 15

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

As noted by the PBC, contract damages are required to place the promisee in "as good a pecuniary position as he would have had if the contract had been performed." *Parker v. Tumwater Family Practice Clinic*, 76 P.3d 764, 768 (Wash. Ct. App. 2003).[56]  As a result of the PBC's breach of the Emerald Club Contract, Plaintiffs do not stand in the same pecuniary position that they would be in had the PBC not reneged on its deal.  Plaintiffs are thus entitled to damages in the amount it will take to place them in the position they would be in had the PBC not breached the Contract.  No legal impediment exists to bar Plaintiffs' recovery.

"Contract damages are ordinarily based on the injured party's expectation interest and are intended to give that party the benefit of the bargain by awarding him or her a sum of money that will, to the extent possible, put the injured party in as good a position as that party would have been in had the contract been performed." *Mason v. Mortgage Am., Inc.*, 792 P.2d 142, 146 (Wash. 1990); *see Eastlake Constr. Co. v. Hess*, 686 P.2d 465, 470 (Wash. 1984).  "[T]he fact of loss must be established with sufficient certainty to provide a reasonable basis for estimating that loss. *Mason*, 792 P.2d at 146 (quotation omitted) (alteration in original).  "Mathematical exactness is not required." *Id.* (citation omitted).

Washington recognizes with equal force that the breach of an option contract entitles the holder to damages for the inability to exercise the option. *See Knox v. Microsoft Corp.*, 962 P.2d 839, 843 (Wash. Ct. App. 1998) (holding that the plaintiff was entitled to damages for the cancellation and early exercise of options where Microsoft breached the plaintiff's employment contract); *Wetherbee v. Gary*, 381 P.2d 237, 239-40 (Wash. 1963) (holding that the promisee may sue for breach of an option contained within a larger contract).  Plaintiffs are "entitled to a damage award that would return [them] to the position [they] would be in had there been no

[56] *See* Dkt. No. 80 at p. 13.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 16

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

breach." *Parker*, 76 P.3d at 768; *see* Restatement (Second) of Contracts § 344(a). To obtain their "expectation interest," Plaintiffs must be granted the "benefit of [their] bargain by being put in as good a position as [they] would have been had the contract been performed[.]" Restatement (Second) of Contracts § 344(a); *see also Parker*, 76 P.3d at 768.

As alleged in the complaint and as amply demonstrated in the facts gathered in discovery, Plaintiffs must be compensated by the difference between the price they would have paid for season tickets and the price they must now pay to obtain the same or comparable seat at Sonics/Thunder games for the coming two seasons. Plaintiffs' expert, Robert Moss, has opined that "the economic loss suffered by Plaintiffs and members of the proposed class as a result of the alleged breach of contract is the cost differential between the price that was charged for the 2007-2008 season and what was charged for comparable tickets for the 2008-2009 season plus the cost differential between the price that was charged for the 2007-2008 season that will be charged for comparable tickets for the 2009-2010 season."[57] Moss has estimated that damages based on his comparative cost analysis will amount to approximately $7.6 million over the next two seasons.[58] This does not include any additional price increase for the 2009-2010 season,[59] but it is generally known that prices for tickets rise 3% per year.[60]

Although Moss noted that there are other factors that could help provide a closer comparative analysis in price, Plaintiffs need not prove damages with "mathematical exactness," especially when resisting summary judgment. *Mason*, 792 P.2d at 146. It is sufficient that Plaintiffs have proven a reasonable basis for calculating damages and that facts remain in dispute

---

[57] *Schoepflin Declaration* Ex. C (Moss Decl. regarding contract damages at ¶ 4).
[58] *Id*. at Ex. B to Moss Decl.
[59] *Id*.
[60] *Id.*; *Schoepflin Decl.* Ex. D (Lewis Decl.) at p. 9 (also found at Dkt. No. 53).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 17

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

as to the exact amount it will take to place Plaintiffs in the position they would be had the PBC not breached the Emerald Club Contract.  *See id.*

Using the reasonable basis for determining damages described above, the finder of fact can calculate the damages required to give Plaintiffs the benefit of the bargain.  *See Shields v. Garrison*, 957 P.2d 805, 807, *opinion amended,* 967 P.2d 1266 (Wash. Ct. App. 1998).  Indeed, "[t]he amount of damages is a matter to be fixed within the judgment of the fact finder."  *Mason*, 792 P.2d at 146; *see also Hawkins v. Marshall*, 962 P.2d 834 (Wash. Ct. App. 1988) (amount of damages awarded in a particular action is within the discretion of the jury); *Shields*, 957 P.2d at 807 (same).  Plaintiffs have met their burden of demonstrating substantial, measurable damages.

**D.** **The Damages Incurred By Plaintiffs Are Reasonably Foreseeable From The PBC's Breach.**

The PBC erroneously contends that the damages Plaintiffs claim are unrecoverable because they are unforeseeable.  Nothing could be clearer from the face of the Emerald Club Contract that by purchasing 2007-2008 tickets, the members would be guaranteed the right to purchase tickets at a specific guaranteed price for the following two seasons.

The only limit on the measure of damages is the foreseeability of the loss.  *See Gaglidari v. Denny's Rests., Inc.,* 815 P.2d 1362, 1373 (Wash. 1991) (citing *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854)); *see also* WPI 303.01.  This rule serves to limit damages to the expectation of the parties for those damages that are the natural and proximate results flowing from the breach, and that are proved with reasonable certainty.  *See Lincor Contractors, Ltd. v. Hyskell*, 692 P.2d 903, 907 (Wash. Ct. App. 1984) *review denied*, 103 Wn.2d 1036 (1985); *Ford*, 43 P.3d at 1228 ("a contract confers no greater rights on a party than it bargains for").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 18

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Here, Plaintiffs accepted and paid consideration for the PBC's offer of the price-guarantee option.  The Emerald Club Contract conferred on the members the right to purchase two more seasons' tickets at specific, unchangeable prices.  In creating the Emerald Club and its price-guaranteed ticket offer, the PBC specifically bound itself to selling tickets by the terms of the Contract.  Refusing to honor this term of the Contract opens the PBC to the extremely foreseeable consequence of having to compensate Plaintiffs for the difference between the guaranteed price and the price of replacement tickets.[61]  This is a natural and proximate result that flows from the PBC's breach.  *See Lincor*, 692 P.2d at 907.  The PBC cannot now claim that these damages are too remote or unforeseeable as they knew they would be offering Emerald Club members ticket prices at a better rate than otherwise available in order to secure substantial season ticket sales in 2007.  That Plaintiffs were unaware that the PBC did not intend to honor the contract does not make the damages flowing from the breach somehow unforeseeable and unenforceable.  *Cf. Hadley*, 156 Eng. Rep. at 151 (holding that damages for lost profits was uncollectible where they were not ordinary and were not communicated to the defendant).

Despite the PBC's contention otherwise, recovery of damages for the PBC's material breach of the Emerald Club Contract is in no way punitive.  An award of contract damages to place Plaintiffs in the same pecuniary position had the PBC not breached the contract is purely compensatory.  *See generally Ford*, 43 P.3d at 1227; *Parker*, 76 P.3d at 768.  Had the PBC not breached the Emerald Club Contract, the members of the proposed Class would have the right, pursuant to the option they secured, to purchase season tickets in the same seats at the same price as they paid for 2007-2008 season tickets as for the 2008-2009 and 2009-2010 seasons.  The

---

[61] In support of their pending class certification motions, Plaintiffs submitted a declaration from Michael Lewis, Ph.D. (*Schoepflin Decl.* Ex. D (also found at Dkt. No. 53) ("Lewis Declaration")), which shows that such damages are foreseeable.  It says, "Data from the Fan Cost Index reported by Team Marketing Report reveals that NBA ticket prices have been increasing by about 3% per year." *Schoepflin Decl.* Ex. D at ¶ 23.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 19

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

obvious, non-punitive way to place Plaintiffs in that same "pecuniary position" requires the PBC to make up the difference between the guaranteed price and the currently available prices for comparable seats. *See Parker*, 76 P.3d at 768 (citation omitted). Granting the PBC's summary judgment motion would bless its breach of contract at the expense of the Emerald Club members who expended great sums of money[62] to retain the option to purchase two more seasons' tickets at set prices. The Court should reject the PBC's request that it receive the benefit of the bargain at the expense of the injured Plaintiffs.

**E.       The Absence Of Out-Of-Pocket Losses Does Not Bar Plaintiffs' Claim For Damages.**

The PBC suggests that Plaintiffs have no damages because they have no out-of-pocket damages and that they received everything they expended in reliance on the contract. This is a misleading and incorrect statement. Plaintiffs paid for and never received the option to purchase 2008-2009 and 2009-2010 season tickets at guaranteed prices. The fact that Plaintiffs could not purchase these tickets and therefore incurred no out-of-pocket losses is of no moment.

There is no requirement that a party must exercise an option in order to obtain damages from the breach of the option contract. *See Knox*, 962 P.2d at 842-43 (refusing to limit damages where a breach of employment contract included losses from the cancellations and early exercise of a stock option contract). A breach of an option contract is a breach of contract. *See* Restatement (Second) of Contracts § 25 (defining option contracts as enforceable contracts). The Emerald Club Contract secured Plaintiffs an option to purchase tickets at a guaranteed price for the 2008-2009 and 2009-2010 seasons. Plaintiffs expended thousands of dollars in 2007 to reserve this option as promised by the Emerald Club Contract. Anyone who joined the Emerald

---

[62] According to the Moss Declaration, the Emerald Club members paid a total of $8.6 million to renew their tickets in 2007. *Schoepflin Decl.* Ex. C at p. 1 of Moss Letter, marked as Moss Decl. Ex. B.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 20

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Club did so in reliance on the promise to secure an option to buy two more seasons' worth of tickets at a very favorable price. To conclude that Plaintiffs must have actually exercised the option to show damages is akin to suggesting that a party must obtain full performance of a contract in order to prove damages even though the contract has been breached by non-performance. This suggestion is ludicrous. Requiring full execution of an option contract to permit recovery of damages for breach of the option contract would make option contracts completely unenforceable. This would contradict Washington law, *see Knox*, 962 P.2d at 842-43, and the widely acknowledged rule that "[a]n option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." Restatement (Second) of Contracts § 25. Moreover, PBC is essentially arguing that Plaintiffs must show consequential damages in order to be entitled to any damages at all. This is entirely incorrect. A claim for economic loss as a result of breach of contract may be proven *either* with direct *or* consequential damages. *See Hofstee v. Dow*, 36 P.3d 1073, 1077 (Wash. Ct. App. 2001) (discussing damages in product liability context).

The PBC's insistence that "Plaintiffs received everything they paid for in 2007" is incorrect. Plaintiffs purchased 2007 season tickets pursuant to the Emerald Club Contract which expressly secured them the option to purchase 2008-2009 and 2009-2010 season tickets at a guaranteed price. Subsequent to the Sonics' transformation into the Thunder, the PBC has not honored this component of the Emerald Club Contract. Plaintiffs have been denied the right to exercise the future ticket purchase option granted by the Emerald Club Contract that they secured by purchasing, at no small cost, 2007-2008 season tickets.[63] Merely because Plaintiffs have been

---

[63] *See* Dkt. No. 58-5 (Brotherson Decl. filed as Ex. D to Myers Decl.); Dkt. No. 58-6 (Bechtel Decl. filed as Ex. E to Myers Decl.)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES (07-1787RAJ) Page - 21

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

denied the opportunity to exercise the guaranteed price option does not mean that they are not entitled to damages.  The Court should reject the PBC's argument to the contrary.

## F.    Refunding The Bare Ticket Price Is Insufficient To Give Plaintiffs The Benefit Of The Bargain.

The PBC insists that, at most, Plaintiffs are only entitled to the face value amount of the ticket price that was guaranteed to them.  However, this would not place Plaintiffs in the same pecuniary position had the Contract not been breached.  If Plaintiffs received only the cost of the guaranteed ticket price, they would be unable to purchase the season tickets that they were offered through the Emerald Club Contract.  Ticket prices, as Moss explained, have risen in price, such that a pure refund based on the ticket price guaranteed to Plaintiffs would not place them in a position to purchase tickets for the 2008-2009 and 2009-2010 Sonics/Thunder seasons.

In making the claim that Plaintiffs deserve only a refund based on the guaranteed price, the PBC again overlooks that Plaintiffs are not claiming a breach of a revocable license, but rather breach of a contract expressly guaranteeing them the option to purchase tickets at a specific, guaranteed prices.  Thus, the PBC's reliance on *Druyan v. Jagger*, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007) and *Bickett v. Buffalo Bills, Inc.*, 472 N.Y.S.2d 245, 247 (N.Y. 1983) is utterly misplaced, as those cases do not involve contracts, but only licenses.  Similarly, *Alejandre v. Bull*, 153 P.3d 864 (Wash. 2007) does not bar recovery of benefit-of-the-bargain damages, as Plaintiffs do not seek damages for negligent misrepresentation, but rather for pure breach of contract.[64]   As explained in section C, *supra*, Plaintiffs are entitled to the difference in price between the guaranteed price, and the price for comparable seats at the Ford Center.

---

[64] *Alejandre* is the Washington Supreme Court's most recent interpretation of the economic loss rule. There, the Court held that a landowner could not recover damages for negligent misrepresentation where there was a purchase and sale agreement that could have provided for this sort of economic loss. This case is irrelevant, where Plaintiffs' claim sounds only in contract, and not in tort law. *See id.* at 867 (stating that the "economic loss rule

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 22

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**G.      The Tickets Do Not Limit The Recovery For Plaintiffs' Breach Of Contract Claim.**

The PBC asserts that it disclaimed any expectation of damages from its breach of contract by virtue of language printed on the back of tickets that Plaintiffs were denied from purchasing. This contention is erroneous and misleading.

The terms of the tickets are not contained within and do not alter the material terms of the Emerald Club Contract.  Washington accepts extrinsic evidence to ascertain the intent of the parties. *See Berg v. Hudesman*, 801 P.2d 222, 229 (Wash. 1990).  However, absent fraud, accident, or mistake, the general rule is "that parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract[.]" *Id.* at 229 (quotation omitted).  Here, the four corners of the Emerald Club Contract made clear that the offer to season ticket holders was a three-year price-guaranteed option to purchase season tickets:  "With your commitment to Sonics Basketball for the 2007-08 season and to celebrate your membership in the Emerald Club, ownership is proud to offer you a three-year guaranteed cost certainty that extends through the 2009-2010 season."[65]  The terms of the ticket, a revocable license incident to the Emerald Club Contract, cannot contradict the unambiguous terms of the Emerald Club Contract.  The Emerald Club Contract does not state that it is a revocable license or that the Sonics could breach it at will.  Even if the terms of the license were read into the Emerald Club Contract, Mr. Byrnes testified that it would have been "an irresponsible business practice" to revoke Emerald Club season ticket holders' tickets.[66]  The terms of the Contract are clear.  There was a bargained-for option to purchase tickets for three seasons at the same price for the same seats.

_____

applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief.")  As such, the economic loss rule and *Alejandre* are totally inapposite.

[65] *Byrnes Dep.* Exhibit 6 at PBC_CA_100095.

[66] *Byrnes Dep.* at p. 57, lines 13-19.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 23

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Similarly, the fact that the tickets disclaim any expectation of commercial use is irrelevant to Plaintiffs' claim.[67]  Plaintiffs do not insist on any damages based on commercial use of the tickets.  Rather, Plaintiffs seek damages in order to be placed in the same pecuniary position had the PBC not breached the contract.  Damages are not dependent on resale or any secondary market, though such secondary markets explain the actual value of the tickets Plaintiffs were denied the right to purchase.  Nor does it matter whether the Sonics stayed in Seattle.  The terms of the contract made clear that the Emerald Club members were guaranteed seats at 2006-2007 prices for the next three years, without mention of whether the Sonics stayed in Seattle.  The fact that the Sonics might leave was not mentioned in the Contract, and indeed, the Sonics' advertisements made sure this was not an express term of the Emerald Club Contract.[68]  The Court should enforce the Emerald Club Contract by its plain terms.

## IV.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request entry of an order denying the PBC's Motion For Summary Judgment On Contract Damages.

DATED this 6th day of October, 2008.

KELLER ROHRBACK L.L.P.

By s/ Frederick W. Schoepflin
    Mark A. Griffin, WSBA #16296
    Frederick W. Schoepflin, WSBA #19060
    Ian Mensher, WSBA #39593
  Email:  mgriffin@kellerrohrback.com
       fschoepflin@kellerrohrback.com
       imensher@kellerrohrback.com

MYERS & COMPANY, P.L.L.C.
Michael David Myers, WSBA #22486
1809 – 7th Ave., Suite 700
Seattle, WA  98101

---

[67] *See* Dkt. No. 80 at 16.
[68] *See Byrnes Dep.* at p. 129, lines 2-12.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
 (07-1787RAJ) Page - 24

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Tel: (206) 398-1188
Fax:  (206) 398-1189
Email:  mmyers@myers-company.com

*Attorneys for Plaintiffs & Proposed Class*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES
(07-1787RAJ) Page - 25

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT BROTHERSON, PATRICK )
SHEEHY and CAROLYN BECHTEL, )
individually and on behalf of all others similarly )     No. 07-1787 RAJ
situated, )
 )     CERTIFICATE OF SERVICE
                                    Plaintiffs, )
 )
        v. )
 )
THE PROFESSIONAL BASKETBALL CLUB,)
L.L.C., an Oklahoma limited liability company )
registered to do business in the State of )
Washington, )
 )
                                    Defendant. )
_____ )

I hereby certify that on October 6, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Bradley S. Keller, Paul R. Taylor, Steven C. Minson, Christina L. Haring and John A. Tondini;

DATED this 6th day of October, 2008.

s/Frederick W. Schoepflin
Frederick W. Schoepflin

CERTIFICATE OF SERVICE
(07-1787 RAJ) Page 26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384